CASE 25—PETITION EQUITY—FEBRUARY 24.

# Hoskins & Hughes vs. Gentry, &c.

### APPEAL FROM MADISON CIRCUIT COURT.

1. The abortive attempt, by force, to dissolve the union, did not essentially change the fundamental relations of the citizens of the revolting States. *De jure* they still owed allegiance to the government, and continued to be citizens of the United States.

2. By the common law, even an alien enemy may take as a devisee, and may hold the property devised subject to the will of the testator's government; consequently, neither alienage nor hostility can render a devise to a public enemy entirely void.

3. If the plaintiff is a public enemy, to dismiss absolutely on that ground would be erroneous; it should be without prejudice.

4. That one of the plaintiffs, who is a merely nominal party, and who could not control the suit nor collect the judgment, is a public enemy, is no ground for dismissing the petition of the beneficial plaintiff who is not an enemy.

5. A testator devised one piece of property to the three sons of G., and another piece to two of them. One of the latter died before the testator, unmarried and without issue. *Held*—That the devise to the three went in equal parts to each of the survivors, and the devise to the two went wholly to the survivor of them.

S. TURNER, for appellants, cited 3. *Bibb,* 291; 5 *Bac. Abr., p.* 124; 4 *Met.,* 386; 7 *Cranch,* 623; *Rev. Stat., chap.* 15, *pp.* 172–3; *Civ. Code,* 398.

BURNAM & CAPERTON, for appellees, cited 1 *Jarman on Wills, p.* 102, *and notes;* 6 *Johns. Ch. Rep.,* 366; 4 *Ala.,* 99; 4 *Met.,* 386.

WM. B. SMITH, on same side, cited *Wheaton's Int. Law, pp.* 522, 527; 3 *Maud & Selw.,* 533.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

This suit in equity was instituted on the 16th of May, 1864, by the appellants, *John Hoskins and Tharpe Hughes,* against the appellees, *Curran Gentry* and others, for enforcing payment of a note held by the appellants on the appellee Curran, for $1,555, payable on the 24th of December, 1857, and, for securing that object, attaching his interest in his uncle Martin Gentry's will.

*Martin Gentry* died about the 9th of May, 1864, a bachelor, leaving a will first published in the year 1858, and modified by several codicils, the last of which .was dated April 28th, 1864.

By the first testamentary publication, as never afterwards changed, the testator gave to his illegitimate son, *Josiah Gentry*, a considerable portion of his large estate, both real and personal. He also gave to his three nephews, *Josiah*, *Thomas*, and the said *Curran Gentry*, another portion; and to the said nephews, *Josiah* and *Thomas*, another portion of his estate. The nephew *Josiah* died intestate and childless before the testator's death.

The illegitimate devisee, *Josiah*, joined the Confederate army in the year 1862, and was a prisoner in Camp Douglas when his father died.

On these facts the appellants claim, as the property of their debtor, *Curran*, one half of the interest devised to his deceased brother *Josiah;* and, alleging that the illegitimate *Josiah* was incapable of taking as devisee, they claim that the devise to him lapsed into undevised estate, and that, therefore, the said *Curran* is entitled to a portion of that also.

The circuit court adjudged that the rebel devisee had legal capacity to take, and was entitled to hold the property devised to him; but, nevertheless, dismissed the petition on the ground that the co-plaintiff, *Hoskins*, had aided the rebellion, and had since removed to *Texas*, one of the rebel States.

The appellants now insist that each of those decisions was erroneous. We consider the first right, but the last wrong— for the following condensed reasons.

A rebel citizen is not an alien even though he resides in a revolting State. The abortive attempt, by force, to dissolve the Union, did not essentially change the fundamental relations of the citizens of those revolting States to the Federal government, as established by its constitution. *De jure* they still owed paramount allegiance to that government, and continued to be citizens of " *the United States.*" In the true international, as well as constitutional sense, they were never

aliens since they first became citizens. But, by the common law, an alien, even an alien enemy, may take as a devisee, and may hold the property devised, subject to the will of the testator's government. Consequently, as neither alienage nor hostility can make a devise to a public enemy in itself void, the inevitable deduction is; that though an insurgent *citizen* in a civil war may be treated as a belligerent, and is deemed a public enemy, yet a devise to him cannot, for that reason alone, be adjudged void. What power the general government may rightfully exercise over the estate we need not suggest, because no such ultimate power, while dormant and unexercised, could affect the decision of this case in its present attitude; and because, also, the President's full and unconditional pardon, pleaded and exhibited, relieves the devise of all hazard of confiscation or sequestration by the government, and secures to the devisee the same title he would have had if he had never aided the rebellion. Neither *Curran Gentry* nor his creditors can, therefore, justly claim any present interest in that devise, which, if not available to the devisee, would have transferred the devised property to the government, and not to the testator's estate as undevised. So far as this question is concerned, the common law has not been changed by any statutory enactment.

But we do not see how we can sustain the decree dismissing the petition absolutely. Had the legal *status* of one of the plaintiffs been sufficient to suspend the action during the war, a dismission without prejudice was the only proper decree.

Nor can we adjudge that even such a dismission would have been proper in this case.

If *Hoskins* rebelled, or aided the rebel cause, he thereby became an enemy to the United States; and as he might and probably would use his property to strengthen the destructive cause in which he thus embarked against his maternal government, its judiciary should afford him no facility for procuring, *during the subsistence of the war*, money or other property which might be made subservient to treason.

Independently of his changed residence, established facts conduce to prove *Hoskins'* hostility to the Union cause; and we therefore feel bound to consider him, in the technical sense, an enemy. Yet, nevertheless, as the suit is expressly brought for the sole benefit of the appellant *Hughes*, a resident citizen uncharged with any kind of disabling incivism, and *Hoskins*, for mere conformity, was associated as only a nominal plaintiff, who would, according to the record, have no control over the case nor any right to collect any part of the judgment that may be obtained, there is no consistent or valid reason for suspending the remedy by the only beneficial party, who, therefore, as we think, had a right to prosecute the suit as brought for his own exclusive use.

The devise to *Thomas J. Gentry's* three sons, including *Curran*, and that to two of them, excluding him, were to them either as a class or as tenants in common; and, therefore, as his son *Josiah* died without any lineal descendant before the testator's death, the surviving co-devisee, *Thomas Gentry*, is constructively, so far, sole devisee of the entire interest devised to said Josiah and himself, and he and the appellee, *Curran* Gentry, are, in like manner, joint devisees of the interest devised to them and their deceased co-devisee, *Josiah*. (*Art.* 2, *p.* 1, *Stan. Rev. Stat., vol.* 2.)

Upon the principles herein adjudged, the case will be disposed of on the return of it to the circuit court.

The erroneous dismission of the petition is reversed, and the cause remanded for further proceedings.